SMITH, Plaintiff in Error, vs. ASHBY, Defendant in Error.

1. A note not negotiable under the statute, but expressed to be " payable without defalcation or discount," is still exempt from any set-off accruing against the assignor after assignment and before notice of it. The third section of the third article of the new practice act does not repeal the third section of the act concerning " bonds and notes," (R. C. 1845.)

*Error to Jackson Circuit Court.*

This was a suit by Smith, the assignee for value, against Ashby, the maker, upon the following note :

" Twelve months after date, I promise to pay John W. Moodie, or order, one hundred and seventy-one dollars and fifty cents, for value received, without defalcation or discount.

" THOS. T. ASHBY.

" November 15, 1849."

This note was by Moodie assigned to plaintiff in July, 1850. The defendant set up, as an off-set, a note for one hundred and eighty dollars, executed by Moodie to him on the 7th of August, 1850, before he had notice of the assignment. The off-

set was allowed by the Circuit Court, and the plaintiff sued out this writ of error.

*James K. Sheley*, for plaintiff in error.  1. The note upon which this suit was founded being payable "without defalcation or discount," the off-set could not be allowed.  (R. C. 1845, p. 190, §3.  *Collins* v. *Waddle*, 4 Mo. Rep. 450.)  2 The third section of article three of the new code does not repeal the law as it stands in the revised code, unless it be by implication, and the law does not favor such repeals.  (24 Pick. 296.  5 Hill, 221.  6 Porter, 219.)  3. The third section was only intended to apply to ordinary notes, and not to notes payable "without defalcation or discount."

*J. W. Morrow*, for defendant in error.  The third section of the third article of the code of 1849 gives Ashby the right to set-off his note against Moodie in this suit, because he had no notice of the assignment of the note by Moodie to Smith. That section was designed to change the third section of the act concerning "bonds and notes," (R. C. 1845,) and to allow an off-set, which accrued against the assignor *before notice* to the maker of the assignment, to all notes except such as are expressed to be " for value received, negotiable and payable without defalcation."

LEONARD, Judge, delivered the opinion of the court.

The question in this case is, whether the third section of the third article of the code of procedure repeals so much of the third section of the statute concerning bonds and notes, as provides that the assignment of a note, expressed "to be paid without defalcation or discount," passes the instrument to the assignee, exempted from that defence.

There is no express repeal, and if repealed at all, it is because the provision of the code is inconsistent with the provision of the old law concerning bonds and notes.  In order to come to a correct conclusion upon this subject, it will be proper to refer to what our law was in reference to these matters, when the new code was adopted.

---

Smith *v.* Ashby.

---

Debts, being mere *choses in action*, were not assignable at law ; but a different rule prevailed in equity, where assignments for value were always valid. Debts, however, being incapable of delivery, like a movable chattel, notice to the debtor was held essential in equity to complete the title, except as against the assignor. By our statute law, however, all bonds and notes were made assignable, and the assignee acquired, without notice to the debtor, a legal title to the debt—the "*jus in re.*" This title, however, was subject to various defences, according to the particular character of the instrument. If it were a note containing the words, " for value received, negotiable and payable without defalcation," it passed to the assignee according to the law merchant, discharged of every defence existing against it in the hands of the payee. If it contained the words found in the present instrument, " to be paid without defalcation or discount," it passed discharged only from that particular defence, and subject to every other exception that could be alleged against it. (*Collins* v. *Waddell*, 4 Mo. Rep. 450.) If it contained neither set of words, the assignee took it subject to every exception existing against it at the time his title accrued. When the legal title passed, the suit was in the name of the assignee and at law ; but if it were only an equitable title, the suit was necessarily in equity, and in the name of the equitable owner. Courts of law, however, were beginning to give effect to these equitable assignments, by allowing the assignee to sue to his own use in the assignor's name, and then treating the beneficiary of the suit as the owner of the debt and as the real plaintiff upon the record. Such being our law, the code is introduced, which provides, in the first section of the third article, that " suits must be prosecuted in the name of the real party in interest ;" and then, in the third section of the same article, declares that, " in case of an assignment of a thing in action, the action by the assignee shall be without prejudice to an off-set or other defence existing at the time of or before notice of the assignment ; but this section shall not apply to bills of exchange, nor to promissory notes for the pay-

ment of money, expressed on the face thereof to be for value received, negotiable and payable without defalcation." The argument for the repeal is, that, providing that the bringing of the suit in the name of the assignee should not deprive the defendant of any set-off or defence existing at the time of or before notice of the assignment, and that this provision should be inapplicable to negotiable paper, was impliedly introducing a new rule of property in every case of an assignment of a thing in action other than of negotiable paper, and is, in effect, an implied provision that every assignee, except of negotiable paper, shall take subject to every set-off and other defence existing at the time of or before notice of the assignment; and so, under our laws, embraces bonds and notes "payable without defalcation or discount;" which, being inconsistent with the old law exempting such paper, when assigned, from set-off, necessarily repeals so much of it.

We may remark that this new system of procedure did not originate here, but in New York; and it is believed that there, all debts, other than negotiable paper debts, were only assignable in equity; and therefore, this provision of the code produced no change there in the rules of property, and was probably made, out of the abundance of caution, lest the change in relation to the bringing the suit in the name of the assignee should be construed to have the effect of annulling these equitable defences of the debtor; and this is the more probable, as in New York this was the only practical effect of the provision.

Here, however, the proposed construction of the provision changes a rule of property. An assignment that, under the old law, passed a debt exempted from set-offs accruing after the assignment and before notice, is, by the proposed construction, to pass it subject to such set-offs. It is a wise rule, in the construction of statutes, not to favor a repeal of the old law by implication, and if both acts can be so construed as to stand together, it is the duty of the courts to adopt such construction. If it were the intention of the legislature to effect this change in an old rule of property, no reason is seen why,

instead of using direct and unmistakable language for that purpose, they used the negative expressions adopted in New York, most probably out of the abundance of caution, to prevent any change in the rules of property by the introduction of this new system of remedies. We may remark, in this connection, that the purpose of the legislature, in adopting this code, was not to lay down new rules of property, but to provide a better system of remedies for the protection and enforcement of rights, as they stood under the existing laws ; and this fact ought to be kept in view in construing its provisions, and must influence the judgment of the court, when an effort is made to extract from ambiguous expressions in it a meaning which is to effect a repeal of an existing rule of property, and substitute a different rule in its place. The question is certainly not free from doubt, but the best judgment we can come to is, that no such change was within the contemplation of the legislature ; and as it is the part of wisdom to abide by the old law, in cases of doubt, we shall allow it to stand untouched by the provision in the code to which reference has been made.

The effect of the opinion is, that the judgment must be reversed, and the other judges concurring, it is reversed accordingly, and the cause remanded, to be re-tried in conformity to what is here declared to be the law of the case.